UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SUMMER THOMPSON,

    Plaintiff,

v.

ACCOUNT DISCOVERY SYSTEMS, LLC,
LAKESIDE RECOVERY SOLUTION INC.,
JOHN H. CHEBAT,
LOUIS L. MENDEZ,
DAMIEN H. MENDEZ,
NICHOLAS J. SZALKOWSKI,
LEVARK HOLDINGS, LLC, and
LEVON D. MASICH,

    Defendants.

_____/

Case No. 1:19-cv-718

HON. JANET T. NEFF

FIRST AMENDED COMPLAINT

**I. Introduction**

1. This is an action for damages brought against debt collectors for violating the

Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*, Driver's Privacy

Protection Act of 1994 ("DPPA"), 18 U.S.C. § 2721 *et seq.,* Michigan Regulation of Collection

Practices Act ("MRCPA"), M.C.L..§ 445.251 *et seq.,* and Michigan Occupational Code

("MOC") M.C.L. § 339.901 *et seq*.

2. Defendants, along with other entities and individuals to be identified in discovery,

are involved in a fraudulent, criminal and ongoing scheme whereby they have conspired to use

false representations and threats to coerce the payment of money from consumers across the

country who allegedly have failed to repay loans.  This scheme, similar to others operated by

1

virtually countless entities located in and around Miami Florida, Atlanta, Georgia, Buffalo, New York, and Charlotte, North Carolina, is based on the use of a script, sometimes known as "The Shakedown" or "The Shake," that includes variations of the following:  The caller calls from a blocked number or uses a telephone number with the consumer's area code, pretends to be a local process server, states to the consumer that "charges" have been filed against the consumer for "breach of contract" or "defrauding a financial institution" and represents that the caller is attempting to locate and serve the consumer with a summons and complaint that has been filed in court against the consumer.  The caller suggests that the charges might not be pursued if the consumer calls a toll free number in the next several hours and arranges to pay money to the fake process server's "client" (which often has a name designed to sound like that of a law firm).  Usually, the threatening messages are left indiscriminately (and unlawfully) with the consumer's relatives, employer and other third parties, in order to increase the likelihood of a response.  When the consumer responds to the call, the collector (often posing as an attorney or paralegal) accuses the consumer of misdeed, makes false threats of pending litigation (and sometimes prosecution), and demands payment of the alleged debt.  Of course, no lawsuit has been filed.  Often times the debt is time-barred.  Often times, the consumer's personal, financial and account information will have been stolen and will have been sold and resold to multiple parties, such that the caller no longer owns or otherwise has any right to collect the account.  Often times, the loan has been repaid and there is no debt owed.  When sued for violating the FDCPA, most of the entities default, accumulate default judgments, and continue to operate under a progression of limited liability companies, with listed "business" addresses that are nothing more than rented private mail boxes.

3.      The use of these unlawful debt collection practices is epidemic.  See, for example, the Complaint for Permanent Injunction and Other Equitable Relief filed on February 24, 2014 in the United States District Court, Western District of New York (Buffalo), Case No. 1:14-cv-122, by the Federal Trade Commission against Federal Check Processing, Inc. and fourteen other debt collection entities defendants.  See also the complaint filed by the United States of America against Williams Scott & Associates, LLC *et al.,* U.S. District Court, Southern District of New York, Case No. 1:14-mj-02546-UA, in which the government alleged that the defendants located in Norcross, Georgia have continuously engaged in a conspiracy to commit wire fraud and violated the FDCPA and other laws, through a payday loan collection scheme that is indistinguishable from the ongoing scheme being perpetrated by the defendants a alleged in this complaint.  The United States Department of Justice, the Federal Bureau of Investigation, the Federal Trade Commission, the Consumer Financial Protection Bureau, the attorneys general of virtually every state, and the Better Business Bureau all have issued press releases that warn consumers about this ongoing scam.

4.      On November 4, 2015, the Federal Trade Commission and other law enforcement authorities around the country announced the first coordinated federal-state enforcement initiative targeting deceptive and abusive debt collection practices. The "Operation Collection Protection" initiative is described by the FTC as a nationwide crackdown by federal, state, and local law enforcement authorities against collectors who use illegal tactics such as harassing phone calls and false threats of litigation, arrest, and wage garnishment. The initiative targets debt collectors who attempt to collect so-called phantom debts – phony debts that consumers do not actually owe.  See www.ftc.gov/news-events/press-releases/2015**.**

5.      Even more recently, the federal government has begun to criminally indict individuals involved in the type of scam that is described in this complaint. See, for example, the forty-one count indictment filed on March 3, 2016 by the United States of America against Alan Ceccarelli, in the United States District Court, Western District of New York (Buffalo), Case No. 1:16-cr-00024-EAW-HKS-1, 122, with charges that include Wire Fraud and Aggravated Identity Theft.

## II.      Jurisdiction

6.      This Court has jurisdiction under 15 U.S.C. § 1692k(d) (FDCPA), 18 U.S.C. § 2724(a) (DPPA), and 28 U.S.C. § 1331. This Court has supplemental jurisdiction regarding plaintiff's state law claims under 28 U.S.C. § 1367. Venue in this judicial district is proper because the pertinent events took place here.

## III.     Parties

7.      Plaintiff Summer Thompson, formerly Summer Gafford, is an adult, natural person residing in Muskegon County, Michigan. Ms. Thompson is a "consumer" and "person" as the terms are defined and used in the FDCPA.  Ms. Thompson is a "consumer," "debtor" and "person" as the terms are defined and used in the MRCPA and MOC.

8.      Defendant Account Discovery System, LLC ("ADS") is an active New York limited liability company, formed on or about November 23, 2011, purportedly doing business at 495 Commerce Drive, Suite 2, Amherst, New York 14228 and/or 11 Pinchot Court, Suite 110, Amherst, New York 14228. ADS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. ADS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. ADS is a "debt collector" as the term is defined and used in the FDCPA. ADS is a "regulated person" as

4

the term is defined and used in the MRCPA. Alternatively, ADS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

9. On May 31, 2012, ADS became registered and qualified to transact business in Michigan. The registered agent for ADS in Michigan is National Registered Agents, Inc., 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

10. ADS is registered in multiple states to transact business as a debt collector. For example, the Statement of Information filed by ADS on April 27, 2018 with the Secretary of State of the State of California (Document No. 18-B49762) states that ADS is a "Debt Collection Agency.

11. ADS maintains an internet domain, www.accountdiscoverysystems.com, registered on March 2, 2012. The domain links to an active website that describes ADS as a debt collection agency and provides an email contact address of info@accountdiscoverysystems.com.

12. ADS, through its employees and agents, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Thompson as described in this complaint.

13. Defendant Lakeside Recovery Solution Inc. ("LRS") is an active New York limited liability company, FEIN 81-387xxxx, formed on or about September 12, 2016, and purportedly doing business at 5815 South Park Avenue, Suite 250, Hamburg, New York 14075 and 3270 Lakeshore Road, Blasdell, New York 14219. LRS uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. LRS regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. LRS is a "debt collector" as the term is defined and used in the FDCPA. LRS is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, LRS is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

5

14.     LRS maintains an internet domain, www.lakesiderecoverysolutions.com, registered anonymously on September 26, 2018 through GoDaddy.com, LLC and DomainsByProxy.com, LLC. The domain links to an active website that describes LRS as a debt collection agency and provides contact telephone numbers of 888-306-2878 and 855-643-1389 (fax), and an email address of admin@lakesiderecoverysolutions.com.

15.     In August of 2019, LRS ran advertisements on multiple internet websites, seeking employees to work as debt collectors in the LRS call center. The advertisements stated: "We at Lakeside Recovery Solutions is a established business for over 4 years in the Hamburg area. We are currently expanding and are looking for self motivated customer service representative that will be handling account receivables. Experience is not required and willing to train. If you are seeking a career that offers health benefits as well as a 401k this is a place for you. PUNCTUALITY is very important to us here at Lakeside Recovery Solutions. We require business casual dress code and are currently offering positions at too different schedules as of 8:30-5:00 and 10:00-7:00. If your interested feel free to call 716-533-0307 or email admin@lakesiderecoverysolution.com to set up interview. We look forward to meeting you and having you join are already successful team." Telephone number 716-533-0307 is registered to defendant Damien H. Mendez.

16.     LRS, through its employees and agents, directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Thompson as described in this complaint.

17.     Defendant John H. Chebat is a natural person, age 44, purportedly residing at 19 Dorchester Road, Buffalo, New York 14222 and 260 Carpenter Avenue, Buffalo, New York 14223. Mr. Chebat is an owner, officer, manager, employee and agent of ADS. Mr. Chebat uses interstate commerce and the mails in a business the principal purpose of which is the collection

of debts. Mr. Chebat regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Chebat is a "debt collector" as the term is defined and used in the FDCPA. Mr. Chebat is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Chebat is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

18.     Mr. Chebat (a) created the collection policies and procedures used by ADS and LRS, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of ADS, (c) oversaw the application of the collection policies and procedures used by ADS and LRS, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by ADS and LRS, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Thompson, (e) ratified the unlawful debt collection practices and procedures used by ADS and LRS, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by ADS and LRS, and their employees and agents, in attempts to collect an alleged debt from Ms. Thompson.

19.     Mr. Chebat directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Thompson as described in this complaint.

20.     Defendant Louis L. Mendez, also known as Louie Mendez, is a natural person, age 29, purportedly residing at 5815 Rosewood Terrace, Lake View, New York 14085. Mr. Mendez sometimes uses the email address louis.1.mendez1@gmail.com to conduct his debt collection operation. Mr. Mendez is an owner, officer, manager, employee and agent of LRS. Mr.

Mendez uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Mendez regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Mendez is a "debt collector" as the term is defined and used in the FDCPA. Mr. Mendez is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Mendez is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

21.     Louis L. Mendez (a) created the collection policies and procedures used by ADS and LRS, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of LRS, (c) oversaw the application of the collection policies and procedures used by LRS, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by ADS and LRS, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Thompson, (e) ratified the unlawful debt collection practices and procedures used by ADS and LRS, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by ADS and LRS, and their employees and agents, in attempts to collect an alleged debt from Ms. Thompson.

22.     Louis L. Mendez directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Thompson as described in this complaint.

23.     Defendant Damien H. Mendez is a natural person, age 26, purportedly residing at 94 Lockwood Avenue, Buffalo, New York 14220, 12 Coronada Street, Buffalo, New York

14220, or 5815 Rosewood Terrace, Lake View, New York 14085. Mr. Mendez is a manager, employee and agent of LRS. Mr. Mendez uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Mendez regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Mendez is a "debt collector" as the term is defined and used in the FDCPA. Mr. Mendez is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Mendez is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

24.     Damien H. Mendez (a) created the collection policies and procedures used by ADS and LRS, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of LRS, (c) oversaw the application of the collection policies and procedures used by LRS, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by ADS and LRS, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Thompson, (e) ratified the unlawful debt collection practices and procedures used by ADS and LRS, and their employees and agents, in connection with their common efforts to collect consumer debts, and (f) had knowledge of, approved, participated in, and ratified the unlawful debt collection practices used by ADS and LRS, and their employees and agents, in attempts to collect an alleged debt from Ms. Thompson.

25.     Damien H. Mendez directly and indirectly participated in the unlawful efforts to collect an alleged debt from Ms. Thompson as described in this complaint.

9

26.     Defendant Nicholas J. Szalkowski, also known as Nick Shaw, is a natural person, age 40, purportedly residing at 7 Benz Drive, Depew, New York 14043. Mr. Szalkowski is a manager, employee and agent of LRS. Mr. Szalkowski uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Szalkowski regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Mr. Szalkowski is a "debt collector" as the term is defined and used in the FDCPA. Mr. Szalkowski is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr. Szalkowski is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

27.     Mr. Szalkowski maintains a profile on the internet website www.linkedin.com, in which Mr. Szalkowski states that he has been the "Chief Compliance Officer" at LRS from July 2019 to the present, and a "Team Leader" at non-party Alliant Capital Management LLC from May 2019 to the present. It will need to be determine in discovery whether Alliant Capital Management LLC participated in the unlawful efforts to collect an alleged debt from Ms. Thompson as described in this complaint.

28.     Mr. Szalkowski (a) created the collection policies and procedures used by ADS and LRS, and their employees and agents, in connection with their common efforts to collect consumer debts, (b) managed or otherwise controlled the daily collection operations of LRS, (c) oversaw the application of the collection policies and procedures used by LRS, and their employees and agents, (d) drafted, created, approved and ratified the tactics and scripts used by ADS and LRS, and their employees and agents, to collect debts from consumers, including the tactics and scripts that were used to attempt to collect an alleged debt from Ms. Thompson, (e)

ratified the unlawful debt collection practices and procedures used by ADS and LRS, and their

employees and agents, in connection with their common efforts to collect consumer debts, and (f)

had knowledge of, approved, participated in, and ratified the unlawful debt collection practices

used by ADS and LRS, and their employees and agents, in attempts to collect an alleged debt

from Ms. Thompson.

29.     Mr. Szalkowski directly and indirectly participated in the unlawful efforts to

collect an alleged debt from Ms. Thompson as described in this complaint.

30.     Defendants operate their debt collection scheme using multiple, unregistered

business names, including: Contract Mediation Services; Contract Mediation Services LLC;

CMS & Associates; and CMS.

31.     On June 25, 2019, defendants anonymously registered through GoDaddy.com,

LLC and DomainsByProxy.com, LLC, the domain www.ContractMediationServices.com. The

domain links to an active website that falsely describes CMS as comprised of attorneys,

providing mediation and arbitration services "nationwide" as well as "in more than 27 major

cities across the globe." The website provides a contact telephone number of 888-373-2922.

Defendants use the domain to communicate with consumer victims via email, using the address

admin@contractmediationservices.com. The website states that CMS does business at 320 Seven

Springs Way, Brentwood, Tennessee 37027, but the address is merely a "virtual office" rented by

defendants from Regus.

32.     Defendants use a merchant account established in the name of "Lakeside

Recovery Solutions" to receive credit card and debit card payments from their victims. Money

deposited in defendants' merchant account is shared among and distributed to the various

participants in the scam, including each named defendant, their employees and agents, and perhaps others.  The application that was filed with the acquiring bank to create the merchant account, as well as the related monthly statements and other account records, will need to be obtained from the acquiring bank via subpoena in discovery, for the purpose of identifying the entities that receive distributions of money from the merchant account and are involved in defendants' debt collection scam.

33.     Defendant Levark Holdings, LLC ("Levark") is an active New York limited liability company, formed on or about March 10, 2016, and purportedly doing business at 1561 Kenmore Avenue, Kenmore, New York 14217. Levark uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Levark regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Levark is a "debt collector" as the term is defined and used in the FDCPA. Levark is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Levark is a "collection agency" and "licensee" as the terms are defined and used in the MOC.

34.     Levark, through its owner, member, manager, employee and agent, defendant Levon D. Masich, directly and indirectly participated in the sale of unlawful efforts to collect an alleged debt from Ms. Thompson as described in this complaint.

35.     Defendant Levon D. Masich is a natural person, age 38, purportedly residing at 4054 Lockport Avenue, North Tonawanda, New York 14120. Mr. Masich is an owner, member, manager, employee and agent of Levark. Mr. Masich uses interstate commerce and the mails in a business the principal purpose of which is the collection of debts. Mr. Masich regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due

another. Mr. Masich is a "debt collector" as the term is defined and used in the FDCPA. Mr.

Masich is a "regulated person" as the term is defined and used in the MRCPA. Alternatively, Mr.

Masich is a "collection agency" and  "licensee" as the terms are defined and used in the MOC.

36.     Mr. Masich is a habitual criminal, convicted felon, and active parolee. Mr.

Masich's most recent conviction was for Criminal Possession of a Controlled Substance in the

Second Degree, for which he was incarcerated on November 26, 2010 and conditionally released

on February 25, 2016 to parole supervision, to expire on February 25, 2021. Mr. Masich's terms

of release prohibit the unlawful conduct that is described in this complaint. Mr. Masich's known

earlier criminal activities include the following: Incarcerated March 17, 1998 for Burglary in the

3rd Degree (burglarized a Catholic Church on multiple occasions, stole a 150 pound tabernacle

and threw it in the Niagara River); incarcerated June 1, 2000 for Burglary in the 3rd Degree;

incarcerated August 30, 2002 for Reckless Endangerment in the 1st Degree; and incarcerated May

31, 2007 for Reckless Endangerment in the 1st Degree.

37.     Mr. Masich engaged in the theft of Ms. Thompson's personal and financial

information by acquiring and reselling portfolios of stolen and counterfeit consumer accounts

containing consumers' personal and financial information, including a portfolio of stolen and

counterfeit Santander accounts that included Ms. Thompson's stolen and counterfeit account, and

otherwise directly and indirectly participated in the unlawful efforts to collect an alleged debt

from Ms. Thompson as described in this complaint.

38.     All Defendants are intricately bound together and combine their efforts in a joint

and common enterprise, using concerted efforts to collect debts allegedly owed by consumers

throughout the United States. Defendants operate collectively and together, in such as way that

they are collecting debts for the benefit of each other, and making each Defendant jointly and severally for the unlawful acts of each Defendant.

39.     An entity that itself meets the definition of debt collector is liable for the unlawful collection activities carried out by another debt collector on its behalf. *See, e.g., Pollice v. National Tax Funding, L.P.,* 225 F.3d 379, 404-06 (3d Cir.2000); *Janetos v. Fulton Friedman & Gullace, LLP,* 825 F.3d 317, 325-26 (7th Cir.2016); *Fox v. Citicorp Credit Services, Inc.,* 15 F.3d 1507, 1516 (9th Cir.1994); *Wadlington v. Credit Acceptance Corp.,* 76 F.3d 103, 108 (6th Cir.1996); *Verburg v. Weltman, Weinberg & Reis Co., LPA et al.,* No. 1:13-cv-1328, 2016 WL 1273349, *7-8 (W.D. Mich. Mar. 28, 2016).

40.     A shareholder, owner, officer, member, manager, employee or agent of a corporate debt collector can be held liable for violating the FDCPA, without piercing the corporate veil, by being directly involved in the day-to-day operation of the company, including the training and managing of employees, reviewing or supervising the review of accounts, materially participating in the activities of the company, supervising collection activities, overseeing compliance with applicable collection laws, ratifying unlawful acts, and the like, for the reason that each such individual is himself a "debt collector" within the statutory definition, namely, each is a "person" in a business, "the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  *See Kistner v. Law Offices of Michael P. Margelefsky, LLC,* 518 F.3d 433, 435-438 (6th Cir. 2008); *Russell v. Goldman Roth Acquisitions, LLC,* 847 F.Supp.2d 994, 1004-06 (W.D.Mich. 2012).

IV.     **Facts**

41.     On January 12, 2008, plaintiff Summer Thompson purchased a red 2000 Chevrolet Blazer ("Blazer"), VIN 1GNDT13W5Y2219123. Ms. Thompson purchased the Blazer for personal, family and household purposes.

42.     Ms. Thompson financed her purchase of the Blazer through United Auto Credit Corp. ("UACC"), which assigned the transaction an original account number of 30000171567991000.

43.     The entire time that the Blazer was in Ms. Thompson's possession, the Blazer experienced a constant series of performance and safety issues that required ongoing and expensive repairs.

44.     In or about June of 2009, Ms. Thompson's insurance company notified Ms. Thompson that prior to Ms. Thompson's purchase of the Blazer, the Blazer had been: (a) in an accident; (b) declared a total wreck; (c) branded with a salvage title; and (d) had the title fraudulently and unlawfully washed by a prior owner to obtain a clean title and conceal that the Blazer was to be resold and used only for salvage parts.

45.     In or about June of 2009, Ms. Thompson contacted UACC and demanded that her purchase of the Blazer be rescinded and her money returned, but UACC refused the demand.

46.     In or about late 2009, UACC sold the account to Santander Consumer USA Inc. ("Santander").

47.     In or about late 2009, Ms. Thompson contacted Santander and demanded that her purchase of the Blazer be rescinded and her money returned, but Santander refused the demand.

48.     According to Santander, Ms. Thompson last made a payment on the account on

October 2, 2010. After October 2, 3010, Ms. Thompson refused to make any more account payments to Santander or anyone else.

49.     According to Santander, Ms. Thompson returned the Blazer to Santander on February 28, 2011 and demanded her money back.

50.     On March 1, 2011, Santander sent to Ms. Thompson, a Notice of Sale, advising that Santander intended to sell the Blazer at private sale, sometime after March 12, 2011.

51.     According to Santander, on or about October 24, 2011, Santander sold the Blazer at auction and applied the proceeds of the sale to the account balance, leaving Ms. Thompson owing Santander a deficiency balance of zero.

52.     However, Santander failed to send Ms. Thompson a timely and proper notice of intended sale of the vehicle prior to the sale of the motor vehicle as required by the Uniform Commercial Code as enacted in Michigan.  MCL 440.9610; MCL 440.9611; MCL 440.9612; MCL 440.9613; and MCL 440.9614.

53.     Because Santander failed to comply with the notice requirements of MCL 440.9613 and MCL 440.9614, Santander became absolutely barred from collecting any deficiency balance related to the sale of the repossessed motor vehicle.  *State Bank of Standish v. Keysor,* 166 Mich App 93 (1988); *Honor State Bank v. Timber Wolf Constr. Co.,* 151 Mich App 681 (1986). In other words, any debt that Ms. Thompson may have owed on the vehicle was satisfied by the money received by Santander for the sale of the vehicle, resulting in Ms. Thompson's account having a zero balance.

54.     Regardless, any claim that Santander may have had against Ms. Thompson in connection with the account became time-barred and judicially unenforceable in 2015 by

operation of the four-year statute of limitations found in Michigan's UCC, MCL 440.2725. *See*

*Harden v. Autovest, L.L.C.,* No. 1:15-cv-34, 2015 WL 4583276, *2-5 (W.D. Mich. July 29,

2015).

55.     Ms. Thompson disputes owing any money to Santander or anyone else in

connection with the account.

56.     Ms. Thompson expressly refuses to pay any money to Santander or anyone else in

connection with the account.

57.     Despite the foregoing, in or before 2014, Santander sold Ms. Thompson's account

and any related, alleged, time-barred debt to an entity named Cascade Capital LLC ("Cascade"),

a California limited liability company.

58.     On or about June 20, 2013, Cascade and defendants Account Discovery Systems,

LLC and John H. Chebat entered into a Collection Service Agreement ("CSA"), wherein ADS

agreed to collect on unpaid portfolios of delinquent consumer accounts owned by Cascade, with

ADS to retain a percentage of the amount collected and with the remainder of the monies

collected to be remitted back to Cascade on a periodic basis.

59.     Pursuant to the CSA, Cascade placed Ms. Thompson's account and any related,

alleged, time-barred debt, with ADS for collection.

60.     Alternatively, and according to defendants Lakeside Recovery Solution Inc. and

Louis L. Mendez, the portfolio of accounts containing Ms. Thompson's stolen and counterfeit

account was purchased from defendants Levark Holdings, LLC and Levon D. Masich on May 20,

2019 and delivered by Mr. Masich to LRS, stored on a computer thumb drive.

61.     Eventually, Cascade had a falling out with ADS and Mr. Chebat. On August 14,

2019, Cascade Receivables Management, LLC filed a lawsuit against Account Discovery

Systems, LLC, John Chebat, and others, in the United States District Court for the Western

District of New York (Buffalo), Case No. 1:19-cv-01080-CCR. Essentially, the complaint filed

by Cascade alleges: (a) since May 7, 2019, ADS and Mr. Chebat have collected from consumers

and failed to remit more than $90,000.00 that is owed to Cascade; (b) on June 6, 2019, Cascade

terminated the CSA with ADS and Mr. Chebat; and (c) ADS and Mr. Chebat, nonetheless and

"on a daily basis," have continued "to obtain monies from consumers who want to pay against a

Cascade account even though Chebat and ADS are no longer authorized to collect on Cascade's

accounts."

62.     Consistent with the allegations made by Cascade in its above-described lawsuit,

ADS, Mr. Chebat, and the other defendants named in this complaint, as detailed below, have

recently contacted and falsely threatened Ms. Thompson with litigation and other adverse

consequences unless Ms. Thompson paid them money to supposedly satisfy the zero-balance and

time-barred account that was purchased by Cascade from Santander and remains with Cascade.

63.     On August 22, 2019, defendants' employee and agent made a call from a blocked

number to Ms. Thompson's cellular telephone and left the following message on Ms.

Thompson's voice mail: "Good morning, my name is Jeffery Larkins. I was hired by the National

Courier Service in Muskegon County, seeking a person of interest, Summer Lynn Thompson.

Summer, we received a filed and formal complaint against your name and Social Security

Number ending in 3190, and there has been a request to be dispatched out to your 118 South

Baldwin Street address, as well as your possible place of employment that is labeled here in the

Court Order. Now, Summer, the number to call directly to the filing party to get answers to any

18

questions or concerns, or to potentially receive a Stop Order on my service, call area code 231-241-1625. That number again is 231-241-1625 and Summer, when calling the Filing Party refer to the pending Docket Number 269629.US. Once again this message is solely intended for Summer Lynn Thompson. With that being stated, you've been formally notified."

64.     On August 26, 2019, Ms. Thompson made a return call to telephone number 231-241-1625. The call was answered by defendants' employee and agent who identified himself as Jeffery Lombardo with Contract Mediation Services LLC. In the ensuing conversation, defendants' employee and agent made the following representations to Ms. Thompson:

a)      Ms. Thompson owed $2,558.33 on an unpaid auto loan with an original account number of 30000171567991000, that was acquired by Santander, account number 1022676763.

b)      Contract Mediation Services is the law firm that was retained to do the background investigation, the asset retention report, and prepare it for litigation and send out the documents.

c)      Our client is Account Discovery Systems. They're the hedge fund that owns the legal rights and chain of title to the debt.

d)      Our client is suing for breach of contract with Santander Bank. They hired our firm to move forward with the filing of the complaint as a lawsuit so that they could start the forcible recovery process.

e)      The Case Docket Number is 269-MI-629.US.

f)      We mailed documents out about fifty-five days ago in regards to the complaint. It was a Notice of Intent advising that our offices were retained

to facilitate the complaint.

g)  The total amount of the contract if it goes through court is $5,437.23.

h)  Our clients know that if they sue for the $5,400.00, there's a lot of things in the State of Michigan that they can do in regards to garnishment, bank levies, and liens against real property or assets.

i)  Defendants had a website at www.contractmediationservices.com.

65.  On August 27, 2019, a debit card payment of $50.00 was made to defendants for the sole purpose of identifying the entities who had acquired Ms. Thompson's stolen account and stolen personal and financial information, and used that information to contact Ms. Thompson and falsely threaten Ms. Thompson with litigation and other adverse consequences in efforts to coerce the payment of money from Ms. Thompson. The debit card information was provided to defendants' employee and agent who identified herself as "Kelly Randall" with "LRS and Associates" at telephone number 877-771-5998. According to the debit card's issuing bank, the payment of $50.00 was deposited into a merchant account maintained by defendants in the name "Lakeside Recovery Solution" in New York, telephone number 888-306-2878.

66.  On August 27, 2019, defendants used admin@contractmediationservices.com to send an email to Ms. Thompson. Attached to the email was a document on the letterhead of "Contract Mediation Services LLC," replete with clipart of the scales of justice, and containing proposed payment arrangements for the supposed satisfaction of Ms. Thompson's account. The document falsely stated: "Upon completion of the contract this will be reported to all 4 major credit bureaus within 35 business days." Also attached to the email was a document captioned "Certificate of Completion" representing that the document was from John Rosenthal, Contract

Mediation Services, with a fake address of 123 South Park Avenue, Buffalo, New York 14075, and falsely representing that Ms. Thompson owed a balance of $5,437.23 in connection with the account. A copy of the email and related documents are attached to this complaint as Exhibit A.

67.     The above-described threats and representations made by defendants and their employees and agents were false and part of a scripted and unlawful debt collection scheme that is ongoing and currently being perpetrated by defendants to coerce the payment of money from thousands of consumers across the country through the use of false threats, intimidation, and unlawful harassment, often times on debts that are not owed and through the use of unlawfully obtained and stolen account and personal information.

68.     Defendants and their employees and agents failed to meaningfully identify themselves and their companies.

69.     Defendants and their employees and agents falsely represented the amount of Ms. Thompson's alleged debt.

70.     Defendants and their employees and agents falsely represented that they had the right to collect the alleged debt.

71.     Defendants and their employees and agents falsely represented that they are lawyers.

72.     Defendants and their employees and agents falsely represented and falsely implied that Defendants managed litigation for lawyers.

73.     Defendants and their employees and agents falsely represented and falsely implied that lawyers were involved in the efforts to collect the alleged debt.

74.     Defendants and their employees and agents falsely represented and falsely implied

that a lawsuit was going to be filed against Ms. Thompson to collect the alleged debt.

75.     Defendants and their employees and agents falsely represented and falsely implied that a lawsuit already had been filed against Ms. Thompson to collect the alleged debt.

76.     Defendants and their employees and agents falsely represented and falsely implied that a process server would be coming to Ms. Thompson's residence and place of employment.

77.     Defendants and their employees and agents falsely represented and falsely implied that if Ms. Thompson did not agree that day to pay money to defendants, then defendants would place a lien or levy on Ms. Thompson's home and other assets and garnish Ms. Thompson's wages.

78.     Defendants and their employees and agents falsely and wrongfully represented that Ms. Thompson was being sued to collect a debt that is time-barred and unenforceable by operation of the applicable Michigan statute of limitations.

79.     Defendants did not intend to file a lawsuit against Ms. Thompson in any Michigan court in efforts to collect the alleged debt.

80.     No Defendant has ever filed any lawsuit in any Michigan court to collect any debt from any person.

81.     The FDCPA states that it is unlawful for a debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of any debt.  15 U.S.C. § 1692d.

82.     The FDCPA states that it is unlawful for a debt collector to use criminal means to harm the reputation of any person.  15 U.S.C. § 1692d(1).

83.     The FDCPA states that it is unlawful for a debt collector to place a telephone call

without meaningful disclosure of the caller's identity.  15 U.S.C. § 1692d(6).

84.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the character, amount, or legal status of any debt.  15 U.S.C. § 1692e(2)(A).

85.     The FDCPA states that it is unlawful for a debt collector to make any false representation regarding the compensation which may be lawfully received by any debt collector for the collection of any debt.  15 U.S.C. § 1692e(2)(B).

86.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that any individual is an attorney or that any communication is from any attorney.  15 U.S.C. § 1692e(3).

87.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.  15 U.S.C. § 1692e(4).

88.     The FDCPA states that it is unlawful for a debt collector to threaten to take any action that cannot legally be taken or that is not intended to be taken.  15 U.S.C. § 1692e(5).

89.     The FDCPA states that it is unlawful for a debt collector to communicate to any person credit information which is known or which should be known to be false.  15 U.S.C. § 1692e(8).

90.     The FDCPA states that it is unlawful for a debt collector to use any false representation or deceptive means to collect or attempt to collect any debt.  15 U.S.C. §

1692e(10).

91.     The FDCPA states that it is unlawful for a debt collector to communicate in a communication with a consumer to fail to disclose that the communication is from a debt collector.  15 U.S.C. § 1692e(11).

92.     The FDCPA states that it is unlawful for a debt collector to falsely represent or imply that documents are legal process.  15 U.S.C. § 1692e(13).

93.     The FDCPA states that it is unlawful for a debt collector to use any business, company, or organization name other than the true name of the debt collector's business, company, or organization.  15 U.S.C. § 1692e(14).

94.     The FDCPA states that it is unlawful for a debt collector to use unfair or unconscionable means to collect or attempt to collect any debt.  15 U.S.C. § 1692f.

95.     The FDCPA states that it is unlawful for a debt collector to collect any amount unless such amount is expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f(1).

96.     Defendants and their employees and agents have violated the FDCPA, 15 U.S.C. §§ 1692d, 1692d(1) and (6), 1692e, 1692e(2)(A), (2)(B), (3), (4), (5), (8), (10), (11), (13) and (14), and 1692f and 169f(1).

97.     Defendants and their employees and agents failed to timely send to Ms. Thompson a notice containing the information required by 15 U.S.C. § 1692g(a).

98.     Defendants and their employees, managers, owners, agents, affiliates and co-conspirators each have intentionally and wilfully violated the FDCPA, MRCPA and MOC.

99.     The FDCPA states in part, "It is the purpose of this subchapter to eliminate

abusive debt collection practices by debt collectors" and "to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged."  15 U.S.C. § 1692(e).

100.    Defendants and their employees, managers, owners, agents, affiliates and co-conspirators, to increase their business and profits, have knowingly chosen to use debt collection practices that violate the FDCPA and Michigan law, to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices.

101.    In connection with efforts to collect an alleged debt from Ms. Thompson, defendants obtained and used personal information regarding Ms. Thompson from an internet skip-tracing database, such as LexisNexis Risk Management, Inc. (Accurint), TransUnion Risk and Alternative Data Solutions, Inc. (TLO), UDT Group, LLC (Delvepointe), or Interactive Data, LLC.

102.    The database used by defendants was derived in part from non-public motor vehicle records and searches made with the database are subject to the terms of the Drivers Privacy Protection Act. Subscribers to the database must sign an application stating that the subscriber will comply with the DPPA. Further, every time a subscriber logs on to use the database, the subscriber is confronted with a screen that requires the subscriber to affirmatively state the permissible purpose under the DPPA for which the subscriber is requesting the personal information.

103.    The DPPA was enacted in response to growing concerns over the ease with which stalkers and other criminals could obtain personal information from state departments of motor

vehicles. *Reno v. Condon*, 528 U.S. 141, 143–44, 120 S.Ct. 666, 145 L.Ed.2d 587 (2000).

104.    The DPPA states:

> (a) Procurement for unlawful purpose. – It shall be unlawful for any person knowingly to obtain or disclose personal information, from a motor vehicle record, for any use not permitted under section 2721(b) of this title.

> (b) False representation. – It shall be unlawful for any person to make false representation to obtain any personal information from an individual's motor vehicle record.

18 U.S.C. § 2722.

105.    The DPPA also states:

> "personal information" means information that identifies an individual, including an individual's photograph, social security number, driver identification number, name, address (but not the 5-digit zip code) [and] telephone number . . . .

18 U.S.C. § 2725(3).

106.    The DPPA also states:

> A person who knowingly obtains, discloses or uses personal information, from a motor vehicle record, for a purpose not permitted under this chapter, shall be liable to the individual to whom the information pertains, who may bring a civil action in a United States district court.

18 U.S.C. § 2724(a).

107.    The DPPA enumerates the only "permissible uses" for which personal information may be obtained.   18 U.S.C. § 2721(b).

108.    Defendants did not have a "permissible use" under the DPPA to obtain, disclose or use personal information regarding Ms. Thompson.

109.    Defendants used the database to obtain, disclose and use personal information regarding Ms. Thompson.

110.    Defendants made a false representation to the provider of the database to obtain

26

personal information regarding Ms. Thompson that was derived from Ms. Thompson's motor vehicle record.

111.    Alternatively, the entity that obtained Ms. Thompson's personal information from the database and disclosed the personal information to defendants, made a false representation to the provider of the database to obtain personal information regarding Ms. Thompson that was derived from Ms. Thompson's motor vehicle record.

112.    It is a crime to knowingly violate the DPPA. 18 U.S.C. § 2723.

113.    Defendants knowingly obtained, disclosed and used Ms. Thompson's personal information, from a motor vehicle record, for a purpose not permitted under the DPPA, and with willful or reckless disregard for the law.

114.    No defendant had a "permissible use" as the phrase is defined in the DPPA to obtain, use or disclose Ms. Thompson's personal information obtained from the database.

115.    No defendant had Ms. Thompson's consent, permission, authorization or waiver to obtain Ms. Thompson's personal information from the database.

116.    A civil action under the DPPA may be commenced within four years after the cause of action accrues. 28 U.S.C. § 1658(a); *Rasmusson v. Chisago County,* , 991 F.Supp.2d 1065, 1079 (D.Minn. 2014).

117.    The DPPA imposes vicarious liability on principals for the acts of the actions of their agents who act with apparent authority. *Margan v. Niles,* 250 F.Supp.2d 63, 77 (N.D.N.Y. 2003).

118.    Defendants, and their employees and agents, each have intentionally and wilfully violated the DPPA.

27

119.    Each defendant had knowledge of, approved of, and ratified the use of the unlawful debt collection practices that are described in this complaint.

120.    As an actual and proximate result of the acts and omissions of defendants and their employees, managers, owners, agents, affiliates and co-conspirators, Ms. Thompson has suffered actual damages and injury, including but not limited to, monetary loss, fear, stress, mental anguish, emotional stress, acute embarrassment, anxiety, loss of sleep, and suffering, for which she should be compensated in an amount to be established by jury and at trial.

## V.    Claims for Relief

### Count 1 – Fair Debt Collection Practices Act

121.    Plaintiff incorporates the foregoing paragraphs by reference.

116.    Each defendant has violated the FDCPA.  Each defendant's violations of the FDCPA include, but are not necessarily limited to, the following:

a)    Defendants violated 15 U.S.C. § 1692d by engaging in conduct, the natural consequence of which is to harass, oppress, or abuse a person in connection with the collection of a debt;

b)    Defendants violated 15 U.S.C. § 1692e by using false, deceptive and misleading representations and means in connection with the collection or attempted collection of a debt;

c)    Defendants violated 15 U.S.C. § 1692f by using unfair and unconscionable means to collect or attempt to collect a debt from plaintiff; and

d)    Defendants violated 15 U.S.C. § 1692g.

**Wherefore,** plaintiffs seek judgment against defendants for:

28

a)      Actual damages pursuant to 15 U.S.C. § 1692k(a)(1);

b)      Statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c)      Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d)      Such further relief as the court deems just and proper.

### Count 2 – Drivers Privacy Protection Act

122.    Plaintiff incorporates the foregoing paragraphs by reference.

123.    Each defendant has violated the DPPA, 18 U.S.C. § 2722(a) and (b).

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages, but not less than liquidated damages in the amount of $2,500.00, pursuant to 18 U.S.C. § 2724(b)(1);

b)      Punitive damages pursuant to18 U.S.C. § 2724(b)(2);

c)      Reasonable costs and attorneys' fees pursuant to18 U.S.C. § 2724(b)(3);

d)      An order requiring defendants to provide plaintiff with the original and all copies of any and all documents of any kind that contain any of plaintiff's personal information, pursuant to 18 U.S.C. § 2724(b)(4);

e)      An injunction prohibiting defendants from disseminating plaintiff's personal information to any other entity, pursuant to 18 U.S.C. § 2724(b)(4); and

f)      An order requiring defendants to provide plaintiff with the original of all documents pursuant to which defendants obtained plaintiff's stolen account information, so that plaintiff may take steps to determine the identity of all entities that have had possession of his stolen account information and thereby enable plaintiff to pursue those entities in efforts to protect plaintiff's credit identify from

being further compromised, disseminated and harmed.

## Count 3 – Michigan Regulation of Collection Practices Act

124.    Plaintiff incorporates the foregoing paragraphs by reference.

125.    Each defendant has violated the MRCPA.  Each defendant's violations of the MRCPA include, but are not necessarily limited to, the following:

a)    Defendants violated M.C.L. § 445.252(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)    Defendants violated M.C.L. § 445.252(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)    Defendants violated M.C.L. § 445.252(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)    Defendants violated M.C.L. § 445.252(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened, (ii) the legal rights of a creditor or debtor, and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, or sale of the debtor's property;

e)    Defendants violated M.C.L. § 445.252(g) by communicating with a debtor without accurately disclosing the caller's identity;

f)    Defendants violated M.C.L. § 445.252(n) by using a harassing, oppressive, or abusive method to collect a debt; and

g)    Defendants violated M.C.L. § 445.252(q) by failing to implement a procedure designed to prevent a violation by an employee.

**Wherefore,** Plaintiff seeks judgment against defendants for:

a)     Actual damages pursuant to M.C.L. § 445.257(2);

b)     Treble the actual damages pursuant to M.C.L. § 445.257(2);

c)     Statutory damages pursuant to M.C.L. § 445.257(2);

d)     Reasonable attorney's fees and court costs pursuant to M.C.L. § 445.257(2); and

e)     Equitable relief pursuant to M.C.L. § 445.257(1).

### Count 4 – Michigan Occupational Code

126.   Plaintiff incorporates the foregoing paragraphs by reference.

127.   Each defendant has violated the MOC.  Each defendant's violations of the MOC include, but are not necessarily limited to, the following:

a)     Defendants violated M.C.L. § 339.915(a) by communicating with a debtor in a misleading or deceptive matter, including simulated judicial process;

b)     Defendants violated M.C.L. § 339.915(e) by making an inaccurate, misleading, untrue, or deceptive statement or claim in a communication to collect a debt;

c)     Defendants violated M.C.L. § 339.915(e) by concealing or not revealing the purpose of a communication when it is made in connection with collecting a debt;

d)     Defendants violated M.C.L. § 339.915(f) by misrepresenting in a communication with a debtor the following: (i) the legal status of a legal action being taken or threatened; (ii) the legal rights of a creditor or debtor; and (iii) that the nonpayment of a debt will result in the debtor's arrest or imprisonment, or the seizure, garnishment, attachment or sale of the debtor's property;

e)     Defendants violated M.C.L. § 339.915(g) by communicating with a debtor

31

without accurately disclosing the caller's identity;

f)      Defendants violated M.C.L. § 339.915(n) by using a harassing, oppressive, or

        abusive method to collect a debt;

g)      Defendants violated M.C.L. § 339.915(q) by failing to implement a procedure

        designed to prevent a violation by an employee; and

h)      Defendants violated M.C.L. § 339.918.

**Wherefore,** plaintiff seeks judgment against defendants for:

a)      Actual damages pursuant to M.C.L. § 339.916;

b)      Treble the actual damages pursuant to M.C.L. § 339.916;

c)      Statutory damages pursuant to M.C.L. § 339.916;

d)      Equitable relief pursuant to M.C.L. § 339.916; and

e)      Reasonable attorney's fees and court costs pursuant to M.C.L. § 339.916(2).


Dated: September 17, 2019                          /s/ Phillip C. Rogers
                                                   Phillip C. Rogers (P34356)
                                                   Attorney for Plaintiff
                                                   6140 28th Street SE, Suite 115
                                                   Grand Rapids, Michigan 49546-6938
                                                   (616) 776-1176
                                                   ConsumerLawyer@aol.com